JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN TOMKA, Individually and on Behalf of all Others Similarly Situated | CRESUD SOCIEDAD ANONIMA, COMERCIAL INMOBILIARIA, FINANCIERA Y AGROPECUARIA, ALEJANDRO GUSTAVO ELSZTAIN, EDUARDO SERGIO ELSZTAIN, et al |

(b) County of Residence of First Listed Plaintiff    Duval County, FL

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant             

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Jacob A. Goldberg, Esquire (215-600-2817)
The Rosen Law Firm, P.A.
101 Greenwood Ave, Ste 400, Jenkintown, PA 19046

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
      Plaintiff

☑ 3   Federal Question
      *(U.S. Government Not a Party)*

☐ 2   U.S. Government
      Defendant

☐ 4   Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☑ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC 78j(b)

Brief description of cause:
Defendants allegedly engaged in activites in violation of Securties Laws

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
04/29/16

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  8214 Condover Ct., Jacksonville, FL 32256

Address of Defendant:  Moreno 877, 23 Floor, (C1091AAQ) City of Buenos Aires, Argentina

Place of Accident, Incident or Transaction:  Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))                                Yes☒  No☐

Does this case involve multidistrict litigation possibilities?                                Yes☒  No☐

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                             Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                             Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
                                                                                             Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
                                                                                             Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Jacob A. Goldberg , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 04/29/16          _____          66399

Attorney-at-Law                                Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/29/16          _____          66399

Attorney-at-Law                                Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| JOHN TOMKA, Individually and on Behalf of All Others Similarly Situated | : | CIVIL ACTION |
| | : | |
| v. | : | |
| CRESUD SOCIEDAD ANONIMA, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| | | |
|---|---|---|
| 4/29/16 | | John Tomka |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-600-2817 | 212-202-3827 | jgoldberg@rosenlegal.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

JOHN TOMKA, Individually and on Behalf of all Others Similarly Situated,

Plaintiff,

v.

CRESUD SOCIEDAD ANÓNIMA, COMERCIAL, INMOBILIARIA, FINANCIERA Y AGROPECUARIA, ALEJANDRO GUSTAVO ELSZTAIN, EDUARDO SERGIO ELSZTAIN, SAÚL ZANG, and MATÍAS IVÁN GAIVIRONSKY,

Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff John Tomka ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cresud Sociedad Anónima, Comercial, Inmobiliaria, Financiera y Agropecuaria ("CRESUD" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired CRESUD American Depositary Receipts ("ADRs") between May 13, 2015 and December 30, 2015, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its officers and/or directors.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff John Tomka, as set forth in the accompanying Certification, purchased CRESUD ADRs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Non-party IDB Development Corporation Limited ("IDBD") is an Israeli holding company with interests in businesses across various industries such as agriculture, financial services, real estate, communications and technology.

8.      Non-party IRSA Inversiones y Representaciones Sociedad Anónima ("IRSA") is a real estate company that engages in a range of diversified real estate-related activities in Argentina. CRESUD beneficially owns 64% of the outstanding common shares of IRSA. IRSA is incorporated in the Republic of Argentina with principal executive offices located at Bolívar

2

108 (C1066AAB) Buenos Aires, Argentina. IRSA's ADRs trade on the NASDAQ under the ticker symbol "IRS."

9.      Defendant CRESUD is an agricultural company that produces basic agricultural commodities in Brazil and other Latin American countries. The Company is incorporated in the Republic of Argentina with principal executive offices located at Moreno 877, 23 Floor, (C1091AAQ) City of Buenos Aires, Argentina. The Company also owns properties in Pennsylvania. CRESUD's ADRs trade on the NASDAQ under the ticker symbol "CRESY."

10.     Defandant Alejandro Gustavo Elsztain ("A. Elsztain") is the brother of Defendant Eduardo Sergio Elsztain and has been the Second Vice-Chairman and Chief Executive Officer ("CEO") of CRESUD since 1994, the Second Vice-Chairman of IRSA since 2001, and is a director of IDBD.

11.     Defendant Saúl Zang ("Zang") has been the First Vice-Chairman of IRSA and CRESUD since 1994, and is a director of IDBD.

12.     Defendant Eduardo Sergio Elsztain ("Elsztain") has been the Chairman of the Board of Directors of CRESUD since 1994, the Chairman and Chief Executive Officer ("CEO") of IRSA since 1991, and is the Chairman of IDBD. Defendant Elsztain beneficially owns 64.3% of the outstanding common shares of IRSA, and beneficially owns 37.4% of the outstanding common shares of CRESUD. By virtue of Defendant Elsztain's influence over CRESUD, Defendant Elsztain has the ability to direct CRESUD's business and affairs.

13.     Defendant Matías Iván Gaivironsky ("Gaivironsky") has served as CRESUD's Chief Financial Officer ("CFO") and as the CFO of IRSA since 2011.

14.     Defendants A. Elsztain, Elsztain, Gaivironsky, and Zang are sometimes referred to herein as the "Individual Defendants."

15.     Defendant CRESUD and the Individual Defendants are referred to herein,

collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### IRSA Adopts International Financial Reporting Standards

16.     IRSA presented both its 2014 and 2015 annual and quarterly financial statements

in accordance with International Financial Reporting Standards ("IFRS") as issued by the

International Accounting Standards Board ("IASB").

17.     According to IFRS 10, Consolidated Financial Statements:

an investor controls an investee if and only if the investor has all the following: a)
power over the investee (see paragraphs 10-14); b) exposure, or rights, to variable
returns from its involvement with the investee (see paragraphs 15 and 16); and c)
the ability to use its power over the investee to affect the amount of the investor's
returns (see paragraphs 17 and 18)

18.     The fact that an investor does not exercise its right to appoint a majority of the

investee's board does not, in any way, diminish its control over the investee, as Paragraph BC97

of IFRS 10 states in relevant part:

an investor that holds more than half the voting rights of an investee has power
over the investee when those voting rights give the investor the current ability to
direct the relevant activities (either directly or by appointing the members of the
governing body). The Board concluded that such an investor's voting rights are
sufficient to give it power over the investee **regardless of whether it has
exercised its voting power**...

[Emphasis added].

19.     IFRS 24 requires that entities involved in related party transactions disclose the

following:

If an entity has had related party transactions during the periods covered by the
financial statements, it shall disclose the nature of the related party relationship as
well as information about those transactions and outstanding balances, including
commitments, necessary for users to understand the potential effect of the
relationship on the financial statements. These disclosure requirements are in

4

addition to those in paragraph 17. At a minimum, disclosures shall include: (a) the amount of the transactions; (b) the amount of outstanding balances, including commitments, and: (i) their terms and conditions, including whether they are secured, and the nature of the consideration to be provided in settlement; and (ii) details of any guarantees given or received; (c) provisions for doubtful debts related to the amount of outstanding balances; and (d) the expense recognised during the period in respect of bad or doubtful debts due from related parties.

The disclosures required by paragraph 18 shall be made separately for each of the following categories: (a) the parent; (b) entities with joint control or significant influence over the entity; (c) subsidiaries; (d) associates; (e) joint ventures in which the entity is a venturer; (f) key management personnel of the entity or its parent; and (g) other related parties.

20.     In discussing relationships between an investor and other parties, IFRS 10,

paragraphs B74 and B75 state, in part:

B74: "…A party is a de facto agent when the investor has, or those that direct the activities of the investor have, the ability to direct that party to act on the investor's behalf. In these circumstances, the investor shall consider its de factor agent's decision-making rights and its indirect exposure, or rights, to variable returns through the de factor agent together with its own when assessing control of an investee."

B75: "The following are examples of such other parties that, by the nature of their relationship, might act as de facto agents for the investor:

   a) the investor's related parties.
   b) a party that received its interest in the investee as a contribution or loan from the investor.
   c) a party that has agreed not to sell, transfer or encumber its interests in the investee without the investor's prior approval (except for situations in which the investor and the other party have the right of prior approval and the rights are based on mutually agreed terms by willing independent parties).
   d) a party that cannot finance its operations without subordinated financial support from the investor.
   e) an investee for which the majority of the members of its governing body or for which its key management personnel are the same as those of the investor.
   f) a party that has a close business relationship with the investor, such as the relationship between a professional service provider and one of its significant client"

## Background

21.     CRESUD's financial statements are consolidated with IRSA's. The Company's

Form 20-F for the fiscal year ended June 30, 2014 filed with the SEC on October 31, 2014 (the

"2014 20-F"), and the Company's Form 20-F for the fiscal year ended June 30, 2015 filed with

the SEC on November 17, 2015 (the "2015 20-F"), both state in relevant part:

**Revenue Recognition**

We derive our revenues primarily from:

*       *       *

(v) **through the consolidation of our financial statements with IRSA's,** we record revenue from the rental and operation of services at offices and shopping centers in Argentina, the development and sale of properties, consumer finance transactions, and hotel operations.

[Emphasis added].

22.     CRESUD beneficially owns 64% of the outstanding common shares of IRSA, its

controlled subsidiary. CRESUD's stock trades parallel to IRSA's as exhibited by the following

line graph:



23.    On May 7, 2014, a transaction was closed whereby IRSA, acting indirectly through its subsidiary, Dolphin Netherlands B.V. ("Dolphin"), and E.T.H. M.B.M. Extra Holdings Limited ("Extra"), acquired 53.3% of the common shares of IDBD. Dolphin invested $272 million for a 50% interest in IDBD, while Extra acquired the remaining 50%. Under the terms of the agreement, Dolphin and Extra agreed to participate on a joint and several basis in the capital increases resolved by IDBD's Board of Directors in order to carry out its business plan for 2014 and 2015, in amounts of at least NIS 300 million in 2014 and NIS 500 million in 2015. As of June 30, 2014, IRSA's indirect interest in IDBD was approximately 23%.

24.    IRSA has designated Dolphin as a Venture Capital Organization ("VCO") under IFRS 28, which allows IRSA to record its investment in IDBD on its balance sheet as an

7

"investment in associate" and record changes in its value through its income statement. This was structured in this manner in order to avoid the inevitable consolidation of IDBD's $6.7 billion net debt with IRSA's and CRESUD's financial statements.

25.     On December 31, 2014, IRSA owned 31% of the common shares of IDBD through Dolphin, and pursuant to an agreement between Dolphin, IRSA, and Extra, dated November 17, 2013 (the "Shareholders Agreement"), IRSA's 31% ownership interest through Dolphin of IDBD gave it the right to appoint three of the nine members of IDBD's Board of directors. Subsequently, Dolphin appointed Defendants Elsztain, Zang, and A. Elsztain to the Board of Directors of IDBD.

26.     On February 10, 2015, Dolphin acquired approximately 61% of the common shares of IDBD pursuant to a rights offering approved by the Board of Directors of IDBD. Extra did not purchase shares in this rights offering. Upon this transaction, IDBD effectively became a subsidiary of IRSA, which would have required IRSA, and ultimately CRESUD, to consolidate IDBD's financial statements with its own.

27.     After the completion of the February 10, 2015 rights offering, on February 10, 2015, Dolphin sold approximately 12% of the common shares of IDBD to Inversiones Financieras Del Sur S.A. ("IFISA") for cash and a note receivable secured by the IDBD shares. IFISA is a wholly-owned subsidiary of IFIS Limited ("IFIS"). Defendant Elsztain is the Chairman of the Board of IFIS, and beneficially owns 37.94% of IFIS stock. Defendant Elsztain also controls more than 50% of IFIS' voting shares through companies controlled by him and via proxies. According to Israeli court filings filed by Defendant Zang, the purpose of this transaction was so Dolphin would not hold more controlling shares than required in order to secure its control over IDBD.

28.     On May 28, 2015, pursuant to the Shareholders Agreement, Extra gave notice to Dolphin that Extra was exercising its rights under the "*buy me buy you*" provision requiring Dolphin to either sell all of its IDBD shares to Extra at a specified price or purchase all of Extra's shares at that specified price. Dolphin elected to purchase all of Extra's IDBD shares, and on October 11, 2015, Dolphin, through IFISA, purchased all of Extra's IDBD shares bringing IFISA's holdings in IDBD to over 32%. Dolphin also assumed all the obligations that Extra had, including the obligation to make certain share repurchases during 2015 and 2016.

29.     As a result of these transactions, Dolphin owned 49% of IDBD and IFISA owned 32% of IDBD. Therefore, Dolphin and IFISA collectively owned 81% of IDBD shares.

30.     Today, IDBD carries $6.7 billion of net debt, is going through a restructuring process, and has a "going concern" letter from its auditor. Furthermore, IRSA is contractually obligated to give IDBD $185 million in capital through 2016, which would further increase itss ownership interest in IDBD.

31.     IRSA hides IDBD's $6.7 billion net debt under the umbrella of Dolphin, its VCO, by recording its investment in IDBD on its balance sheet as an "investment in associate" and recording changes in its value through its income statement, even though IRSA, through entities related to Defendant Elsztain, owns 81% of its subsidiary IDBD.

**Materially False and Misleading Statements**

32.     On May 12, 2015, during aftermarket hours, the Company issued a press release announcing results for the nine month period of fiscal year 2015 ended March 31, 2015, stating in relevant part:

**Cresud S.A.C.I.F. y A. Announces Results for the Nine month period of FY 2015 ended March 31, 2015**

BUENOS AIRES, Argentina, May 12, 2015 /PRNewswire/ -- Cresud S.A.C.I.F. y A. (NASDAQ: CRESY, BASE: CRES), today announces results for the Nine month period of FY 2015 ended March 31, 2015.

## HIGHLIGHTS

- The net income for the Nine month period of 2015 was a loss of ARS 452.9 million, compared to a loss of ARS 527.5 million in the same period of 2014.

- Operating income increased by 87.5% in the nine month period reaching ARS 1.737,1 million mainly due to higher revenues coming from the agricultural and urban segment, a higher recognition of the fair value of the biological assets of grains and sugar cane and the sales of Investment Properties made by our subsidiary IRSA.

- During this campaign we expect to transform 11,900 ha in the countries where we operate. There were no Farmland Sales during the third quarter of FY 2015.

- We planted approximately 210,000 hectares in the region during this campaign that presented good weather conditions. As of March 2015, the harvest progress is 23%.

**Financial Highlights**
(In millions of Argentine Pesos)
Nine month Period 2015
Ended March 31, 2015

| Income Statement | 03/31/2015 | 03/31/2014 |
|---|---|---|
| Agricultural Business Revenue | 1,642.6 | 1,141.5 |
| Agricultural Business Gross Profit | 224.1 | 355.1 |
| Urban Properties Revenues | 2,539.9 | 2,062.6 |
| Urban Properties Gross Profit | 1,407.0 | 1,102.4 |
| Consolidated Gross Profit | 1,631.2 | 1,457.5 |
| Consolidated Profit from Operations | 1,756.6 | 935.1 |
| Profit / (Loss) For the Period | -452.9 | -527.5 |
| Attributable to: | | |
| Cresud's Shareholders | -487.5 | -494.2 |
| Non-Controlling interest | 34.6 | -33.3 |
| EPS (Basic) | -0.99 | -0.68 |
| EPS (Diluted) | -0.99 | -0.68 |
| **Balance Sheet** | **03/31/2015** | **06/30/2014** |

| | | |
|---|---|---|
| Current Assets | 3,420.1 | 4,987.7 |
| Non Current Assets | 11,000.8 | 10,796.0 |
| Total Assets | 14,420.9 | 15,783.7 |
| Current Liabilities | 4,385.7 | 4,800.4 |
| Non Current Liabilities | 6,821.2 | 6,548.5 |
| Total Liabilities | 11,206.9 | 11,348.9 |
| Non-Controlling Interest | 1,968.7 | 2,488.9 |
| Shareholders' Equity | 3,214.0 | 4,434.8 |

33.    On September 7, 2015, during aftermarket hours, the Company issued a press

release announcing results for fiscal year 2015 ended June 30, 2015, stating in relevant part:

### Cresud S.A.C.I.F. y A. Announces Results for Fiscal Year 2015 Ended June 30, 2015

BUENOS AIRES, Argentina, Sept. 7, 2015 /PRNewswire/ -- Cresud S.A.C.I.F. y A. (NASDAQ: CRESY, BASE: CRES), today announces results for the Fiscal Year 2015 ended June 30, 2015.

### HIGHLIGHTS

- The net income for the fiscal year 2015 was a net gain of ARS 756.8 million, compared to a net loss of ARS 1,408.4 million in fiscal year 2014, explained by a higher operating income, lower exchange rate differences and losses of IRSA investment in IDBD Development Corporation valued at                              fair                              value.

- Operating income for fiscal year 2015 was ARS 2,792.2 million, 135.6% higher than in fiscal year 2014, explained by improved results from Farmland Sales and Sales of Investment Properties from our subsidiary IRSA.

- During this year we sold farms for approximately USD 130 million and transformed        11,545        hectares        in        the        region.

- Weather conditions during the crop season were good in the region, allowing us to plant 211,776 hectares and to produce 627,203 tons in the region. However, the depressed levels of commodity prices did not allow us   to   reach   a   productive   return   according   the   campaign.

- Grain and Sugarcane Segment registered operating losses of ARS 252.9 million and ARS 12.1 million respectively. Cattle and Milk segment observed   operating   gains   of ARS   36.7   million and ARS   4.2 million respectively, higher than in 2014 due to an increase in meat

production, milk productivity and solid growth in prices of both products.

- Our investment in IRSA generated very good results. Its EBITDA reached ARS 2,801.1 million, 91.5% higher than in 2014.

- We expect a "Nino" campaign for 2016 with rain levels above average. In Argentina, due to the current macroeconomic conditions and the profitability equation of the sector, the company is analyzing the surface to plant in owned farms and the surface that will lease to third parties.

**Financial Highlights**
(In millions of Argentine Pesos)
Fiscal Year 2015
Ended June 30, 2015

| **Income Statement** | **06/30/2015** | **06/30/2014** |
| --- | --- | --- |
| Agricultural Business Revenue | 2.361,0 | 1.812,1 |
| Agricultural Business Gross Profit | 288,3 | 349,4 |
| Urban Properties Revenues | 2.547,1 | 2.155,8 |
| Urban Properties Gross Profit | 1.913,3 | 1.507,5 |
| Consolidated Gross Profit | 2.201,9 | 1.856,9 |
| Consolidated Profit from Operations | 2.826,9 | 1.203,0 |
| Profit / (Loss) For the Period | 756.8 | -1.408,4 |
| Attributable to: | | |
| Cresud's Shareholders | 114.0 | -1,067,9 |
| Non-Controlling interest | 642.8 | -340.5 |
| EPS (Basic) | 0.23 | (2.15) |
| EPS (Diluted) | 0.21 | (2.15) |
| **Balance Sheet** | **06/30/2015** | **06/30/2014** |
| Current Assets | 4,227.4 | 4,987.7 |
| Non Current Assets | 11,684.9 | 10,796.0 |
| Total Assets | 15,912.3 | 15,783.7 |
| Current Liabilities | 4,488.5 | 4,800.4 |
| Non Current Liabilities | 6,909.1 | 6,548.5 |
| Total Liabilities | 11,397.5 | 11,348.9 |
| Non-Controlling Interest | 2,558.9 | 2,488.9 |
| Shareholders' Equity | 4,514.8 | 4,434.8 |

34.     On November 11, 2015, during aftermarket hours, the Company issued a press release announcing results for the first quarter 2016 ended September 30, 2015, stating in relevant part:

**Cresud S.A.C.I.F. y A. Announces Results for the First Quarter 2016 ended September 30, 2015**

BUENOS AIRES, Argentina, Nov. 11, 2015 /PRNewswire/ -- Cresud S.A.C.I.F. y A. (NASDAQ: CRESY, BASE: CRES), today announces results for the First Quarter of FY 2016 ended September 30, 2015.

## HIGHLIGHTS

- Net loss for the first quarter of 2016 was ARS 361.8 million compared to income for ARS 21.7 million in the same period of 2015, mainly due to the change in the valuation method applied with respect to our subsidiary IRSA's investment in IDB Development Corporation.

- Profit from operations rose 12.5% in the quarter, mainly due to higher revenues and sales of investment properties derived from the urban segment, offset by lower profits from the agricultural segment.

- During this quarter we made no sales of farmlands in the region.

- We expect to plant approximately 176,000 hectares in the region.

- Our subsidiary Brasilagro declared dividends for BRL 80.7 million (BRL/share 1.3977) that will become payable on November 13, 2015.

**Financial Highlights**
(In millions of Argentine Pesos)
First Quarter of FY 2016
Ended September 30, 2015

| Income Statement | 09/30/2015 | 09/30/2014 |
|---|---|---|
| Agricultural Business Revenue | 679.9 | 780.2 |
| Agricultural Business Gross Profit | 86.1 | 105.4 |
| Urban Properties Revenues | 721.0 | 596.6 |
| Urban Properties Gross Profrt | 540.3 | 441.3 |
| Consolidated Gross Profit | 617.5 | 540.5 |
| Consolidated Profit from Operations | 670.8 | 596.3 |
| Profit / (Loss) For the Period | (361.8) | 21.7 |

Attributable to:

| | | |
|---|---|---|
| Cresud's Shareholders | (292.2) | (122.0) |
| Non-Controlling interest | (69.6) | 143.7 |

13

| | | |
|---|---|---|
| EPS (Basic) | (0.59) | (0.25) |
| EPS (Diluted) | (0.59) | (0.25) |

| **Balance Sheet** | **09/30/2015** | **06/30/2015** |
|---|---|---|
| Current Assets | 4,669.8 | 4,212.1 |
| Non Current Assets | 11,067.3 | 11,684.9 |
| Total Assets | 15,737.1 | 15,897.0 |
| Current Liabilities | 4,096.4 | 4,473.2 |
| Non Current Liabilities | 7,831.7 | 6,909.1 |
| Total Liabilities | 11,928.1 | 11,382.3 |
| Non-Controlling Interest | 2,258.9 | 2,558.9 |
| Shareholders' Equity | 3,809.0 | 4,514.8 |

35.     On November 17, 2015 the Company filed its 2015 20-F with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting was effective as of June 30, 2015. The 2015 20-F was signed by Defendant Gaivironsky. The 2015 20-F also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants A. Elsztain and Gaivironsky attesting to the accuracy of financial reporting.

36.     The 2015 20-F stated that IRSA's Global Notes program contains an "Incurrence of Additional Indebtedness" covenant that expressly prohibits its EBITDA to Interest ratio to be less than 1.75x. The 2015 20-F stated in part:

> IRSA NCN due 2017 and 2020 contain certain customary covenants and restrictions, including among others, limitations for the incurrence of additional indebtedness, restricted payments, disposal of assets, and entering into certain transactions with related companies.
>
> Under the NCN indentures, IRSA is permitted to incur additional indebtedness provided its coverage of consolidated interest ratio is higher than 1.75. The coverage of consolidated interest ratio is defined as consolidated EBITDA divided by consolidated interest expense, subject to certain adjustments. EBITDA is

defined as operating income plus, depreciation and amortization and other consolidated non-cash charges.

37.     The 2015 20-F also stated that Dolphin qualifies as a VCO under IFRS 28, stating

in part:

> As Dolphin is a subsidiary that qualifies as a VCO in accordance with the IAS 28 exemption referred to in Note 2.3 (d), the Company has recorded its interest in IDBD at fair value with changes in the income statement.

*     *     *

**Venture Capital Organization**

> We generally account for our investments in associates under the equity method. However, IAS 28 "Investments in Associates" provides an exemption from applying the equity method where investments in associates are held through "Venture Capital Organizations" (VCO) or venture capital entities, as defined in Spanish, even when we are not a VCO. This type of investment may be accounted for at fair value with changes in net income for the years because such measure proves to be more useful to users of financial statements than the equity method.

38.     The statements referenced in ¶¶ 32-37 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Dolphin does not adequately qualify as a VCO, and therefore, IDBD's $6.7 billion net debt should be consolidated with IRSA's financial statements; (2) as such, CRESUD's financial statements failed to consolidate IDBD's $6.7 billion net debt; (3) IRSA's impending consolidation of IDBD's debt would violate IRSA's Global Notes Indenture, as IRSA would be in breach of the "Incurrence of Additional Indebtedness" covenant, which prohibits its EBITDA to interest coverage ratio to be less than